UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANAM ABBAS, on behalf of herself and all others similarly situated, | : : : : | Civil Action No. |
| Plaintiff, | : : : | CLASS ACTION COMPLAINT |
| v. | : : | JURY TRIAL DEMANDED |
| EARLY WARNING SERVICES, LLC, and FIRST ADVANTAGE BACKGROUND SERVICES CORP., | : : : | |
| Defendants. | | |

On behalf of herself and all others similarly situated, Plaintiff Anam Abbas ("Plaintiff" or "Ms. Abbas"), by and through her attorneys, Francis & Mailman, P.C., respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, *as amended* ("FCRA"), brought on behalf of consumers against companies that sell background information for use in investigating applicants for credit, banking products (including checking and savings accounts) and applicants for employment and promotion in the financial industry. Among other things, Defendants sell "Internal Fraud" warnings included in background reports to potential employers and in reports to financial institutions. These warnings provide personal information about individual consumers, labelling them as fraudsters. Defendants sell these warnings for the purpose of assisting financial institutions to avoid hiring people who have allegedly defrauded financial institutions previously. Given the nature of these warnings, and the purposes for which they are regularly sold, Defendants are squarely regulated by the FCRA.

2.     Consumers who subsequently learn they were flagged as thieves or fraudsters dispute the inaccurate information with Defendants and often times these notations are removed from their reports. Under FCRA section 1681e(b), Defendants, as consumer reporting agencies and/or resellers of credit information, are required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Had Defendants actually followed such required procedures, these consumers would never have been flagged as fraudsters in the first place.

3.     Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for herself and a class of similarly situated consumers who disputed and for whom Defendants removed the misleading and/or unverifiable Internal Fraud warnings.

**PARTIES**

4.     Plaintiff Anam Abbas is an adult individual residing in Upper Darby, Pennsylvania.

5.     Defendant Early Warning Services, LLC ("EWS") is a business entity and credit reporting agency that regularly conducts business in the Commonwealth of Pennsylvania, and which has a principal place of business located at 8777 E. Hartford Drive, Suite 110, Scottsdale, Arizona 85255.

6.     Defendant First Advantage Background Services Corp. ("FABS") is a business entity, credit reporting agency and a reseller of credit information which regularly conducts business in the Commonwealth of Pennsylvania, and which has a principal place of business located at 100 Carillion Parkway, St. Petersburg, Florida 33716.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought herein arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Plaintiff and Defendants "reside" in this District as defined in 28 U.S.C. § 1391(c).

**FACTUAL ALLEGATIONS**

**Defendants' Practices As A Consumer Reporting Agency and Reseller**

9. Defendant EWS markets itself as an industry leader in account threat detection on its website, stating that it "provides innovative risk management solutions to a diverse network of 1,100 financial institutions, government entities and payment companies, enabling businesses and consumers to transact with safety, speed, and convenience. Owned and governed by five of the largest banks in the United States, this unique business model facilitates a data exchange system based on collaborative intelligence and trusted exchange." *See* http://www.earlywarning.com/index.html.

10. EWS is a nationwide specialty consumer reporting agency which sells, among other things, "Internal Fraud" and "Account Abuse" warnings to financial institutions as well as resellers of credit information. EWS is jointly owned by Wells Fargo, Bank of America, JPMorgan Chase, BB&T and Capital One. *See* http://www.earlywarning.com/pdf/early-warning-corporate-overview.pdf.

11. Upon information and belief, financial institutions furnish information relating to the alleged Internal Fraud warnings to EWS. EWS confirms that it serves approximately 1,100 such institutions and "[e]ach day hundreds of [financial institutions] contribute timely, accurate

and relevant transactional data. [EWS] serves as custodian to this immense database, which reflects the activity of *approximately 50 percent* of the country's eligible banking population." *Id*. (emphasis added).

12. As represented by Defendant EWS, the Internal Fraud warnings are a useful tool for financial institutions in terms of theft prevention.

13. FABS, in its capacity as a consumer reporting agency and a reseller of consumer information, obtains consumer information secondarily from EWS relating to the Internal Fraud warnings. Once FABS receives the requested consumer credit information, it assembles and merges the information into a FABS background credit report, which it then sells to third party employers and prospective employers for pre-employment and pre-promotion screening.

14. A FABS Pre-Employment/Security Screening report contains vast amounts of information about an employment applicant that Defendants have assembled, compiled and evaluated, including employment verification, fingerprint verification through the FBI's system, credit information from Experian, and the Internal Fraud warnings from EWS. The information contained within a FABS background report is derived from electronic data and files that Defendants maintain in their usual course of business, as well as from third parties and outside sources that Defendants contact at the time of an employer's request which does not reside in Defendants' files. Some of the data that Defendant FABS sells through background reports derives from data that it has purchased from other consumer reporting agencies and which it resells through a Pre-Employment/Security Screening report.

15. By selling such reports for a fee with the anticipated or expected use of such reports by the entities referenced above, Defendants operate as "consumer reporting agencies" ("CRAs"), consumer reporting agencies "that compile[s] and maintain[s] files on consumers on a

nationwide basis", and nationwide specialty consumer reporting agencies ("NSCRAs") as defined by 15 U.S.C. § 1681a(f), § a(p) and § a(x), respectively.

16. In addition, Defendant FABS also operates as a "reseller" as defined by 15 U.S.C. § 1681a(u).

17. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs, NSCRAs and Resellers.

18. Despite the fact that Defendants assemble and compile consumer information for sale in the form of background reports to employers and credit insurers on a nationwide basis, Defendants do not observe any reasonable standard of accuracy regarding the Internal Fraud warnings contained within the reports.

19. Upon information and belief, Defendants report these Internal Fraud warnings without uniform standards defining what constitutes "fraud," and allow financial institutions to furnish the warnings without requiring them to inform the employee or customer that it intends to report information about them to a national database.

20. When Defendants upload the fraud warnings into their system, they do not review the furnished information. Any review, if at all, only occurs at such future time that a consumer disputes the information as inaccurate.

21. A fraud warning on a background report is generally very detrimental to an applicant's employment opportunities, and/or credit and banking opportunities. This is understood by Defendants in their promotion of the product, representing that one of its purposes is to help its customers manage risk, in part by preventing them from unwittingly hiring someone who previously defrauded a financial institution.

22. Many of Defendants' customers use their background screening services as a final stage of the hiring process, submitting the background inquiry to Defendants after selecting the job applicant for employment. As such, the potential employer had already decided to hire the consumer, conditioned only upon he or she clearing background checks, including the EWS internal fraud warnings.

23. In addition, while Defendants will provide certain information to consumers upon written request, Defendants admittedly will not provide consumers with all of the information that the FCRA requires, including but not limited to, the identities of persons or entities who procured a report from the Defendants (often referred to as consumer report "inquiries").

24. Defendants' practice not only violates the FCRA as a matter of law, it exacts serious consequences on consumers and interstate commerce.

25. Defendants negligently and willfully violate the FCRA by failing to comply with its requirements upon CRAs, NSCRAs and Resellers to follow reasonable procedures to assure maximum possible accuracy.

**The Facts Pertaining to Class Representative Plaintiff Anam Abbas**

26. In April 2014, Plaintiff was working as a bank teller at Bank of America, and had been working there for approximately four months. Plaintiff struggled with the position, and sometimes her drawer would be short or over at the end of the day.

27. On or about April 16, 2014, she was accused of force-balancing her drawer so that it would balance correctly, however she had never engaged in that practice. Plaintiff was terminated by Bank of America, but she was not informed that Bank of America would report the alleged fraud to a national database that would render her unemployable in the financial sector.

28. Bank of America is a co-owner of EWS, and participates in the EWS system.

29. In or about February 2015, Plaintiff applied online for a personal banking position at a Citizens Bank branch.

30. Plaintiff received a call from Citizens Bank, and was invited for an in-person initial interview with Brian Kohl, the manager.

31. After the initial interview, she was invited back for a second in-person interview with the regional manager. After the second interview, she was offered the job pending the results of a background check. She signed an authorization form for Citizens Bank to request a pre-employment screening report through the bank's electronic portal.

32. Citizens Bank ordered a Pre-Employment/Security Screening ("Background Report") about Plaintiff from Defendant FABS. As a result of that inquiry, on or about February 24, 2015, Defendant FABS issued a Background Report about Plaintiff to Citizens Bank.

33. The Background Report resold an EWS Early Warning Service indentified as an "Internal Fraud Match" presumably furnished by Bank of America. The "Match Record 1" lists the severity as 100, provides names for Internal Fraud Prevention Contact Information, as well as Plaintiff's name and the last four digits of her social security number. The "Case Information" includes Fraud Case Number CSI-227810, Incident Date 03/25/2014, Principal Loss 0.00, and Dispute Code 00. This Internal Fraud Match is the only derogatory information listed on Plaintiff's Background Report.

34. Plaintiff received a call from Robert Cerece in Citizen Bank's human resources department, advising her that she was ineligible for the position based upon information in the background report and she would receive a letter confirming that.

35. Citizens Bank, or Defendants on its behalf, provided Plaintiff with a copy of the adverse Background Report and her rights under the FCRA. The Background Report did not contain or include a list of all persons and/or entities that had obtained or procured a report from Defendants about Ms. Abbas.

36. After reviewing the Background Report, Plaintiff disputed the fraud notation with Citizens Bank and she was advised by Mr. Cerece that the bank would hold her position open pending the results of her disputes with Defendants.

37. Subsequently, Plaintiff disputed the Internal Fraud warning with Bank of America directly and Defendant FABS, pursuant to FCRA section 1681i(a).

38. On or about April 2, 2015, Bank of America responded to Plaintiff's dispute with confirming that her record would be removed on the EWS system, it would request Defendants delete the fraud warning from her report.

39. On or about April 3, 2015, Plaintiff received a letter from Defendant EWS advising that its investigation "confirms that your file contains information which is incomplete, inaccurate or the accuracy of which cannot be verified." (Exhibit A hereto).

40. On or about April 14, 2015, Defendant FABS responded to Plaintiff's dispute by requesting verification of her personal identifying information and failed to inform her that the fraud warning had in fact been deleted from her report.

41. Plaintiff suffered damages as a result of being falsely reported as having committed internal fraud, including delay, loss of employment opportunity, loss of wages and benefits, as well as emotional and reputational harm.

42. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

43. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> FCRA Section 1681e(b) Employment Classes:
>
> a. All natural persons residing within the United States and its Territories regarding whom the Defendants published or caused to be published a consumer report for employment purposes which included an Internal Fraud warning that was later removed from the Early Warning System.
>
> b. All natural persons residing within the United States and its Territories to whom EWS sent a letter substantially similar in form to the April 3, 2015 letter that EWS sent to Plaintiff, attached hereto as Exhibit A.

Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

45. **Numerosity**. **FED. R. CIV. P. 23(a)(1)**. The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants compile and assemble standardized Internal Fraud warnings in background reports about hundreds of consumers per year, and fail to follow reasonable procedures to assure maximum possible accuracy of those

warnings, and those consumers' names and addresses are identifiable through documents maintained by Defendants.

46. **Existence and Predominance of Common Questions of Law and Fact**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all Class members, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

> Whether Defendants acted willfully and negligently in disregard of the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of consumer information in publishing Internal Fraud warnings.

47. **Typicality**. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory, actual and punitive damages that she seeks for absent Class members.

48. **Adequacy**. FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Classes. Her interests are aligned with, and are not antagonistic to, the interests of the Class members she seeks to represent. She has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class members' interests.

49. **Predominance and Superiority**. FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory, actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually

impossible for the Class members, individually, to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## **CAUSES OF ACTION**

### **COUNT I**
### **Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**
### **(On behalf of Plaintiff and the Employment Class)**

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

51. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

52. Defendants are each a "person," a "consumer reporting agency," a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," and a "nationwide specialty consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(b), § 1681a(f) and § 1681a(p) and § 1681a(x), respectively.

53. Defendant FABS is also a "reseller" as defined by FCRA, 15 U.S.C. § 1681a(u).

54. The above-mentioned reports were "consumer reports" used for "employment purposes" within the meaning of 15 U.S.C. §§ 1681a(d) and 1681a(h).

55. Defendants' Internal Fraud warnings are not compiled by following procedures that assure maximum possible accuracy.

56. The inaccuracy of the Internal Fraud warnings about Plaintiff, and others, published to employers and potential employers was due to Defendants' failure to follow reasonable procedures designed to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b). Defendants simply report any and all information furnished to them by financial institutions, and designed this database in reckless disregard of the truth and of the reputation and personal interests of the consumers who are labeled with these warnings.

57. Defendants are liable for willfully and negligently violating section 1681e(b) of the FCRA by failing to comply with the requirements to follow reasonable procedures designed to assure maximum possible accuracy of consumer information.

58. Defendants' actions cause harm to job applicants and employees such as Plaintiff as more fully described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of statutory, actual and punitive damages for Plaintiff and the Classes;

C. An award of attorneys' fees and costs; and,

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

                                                Respectfully submitted,

                                                **FRANCIS & MAILMAN, P.C.**

Dated: August 14, 2015        BY:   */s/ John Soumilas*
                                                    JAMES A. FRANCIS
                                                    JOHN SOUMILAS
                                                    Land Title Building, 19th Floor
                                                    100 South Broad Street
                                                    Philadelphia, PA 19110
                                                    T: 215.735.8600
                                                    F: 215.940.8000
                                                    E: jfrancis@consumerlawfirm.com
                                                    E: jsoumilas@consumerlawfirm.com

                                                   *Attorneys for Plaintiff*